UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH REIFERD BURCH,<br><br>     Plaintiff,<br><br>v.<br><br>RYAN SMATHERS, in his official capacity as Mayor of the City of Orofino; RON BANKS, TED BROWN, MIKE DEITRICK, AVERY DUNAWAY, DON GARDNER and MARGUERITE McLAUGHLIN in their official capacities as members of the Orofino City Council,<br><br>     Defendants. | Case No. 3:12-cv-00632-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: Dkt. Nos. 22, 36, 58, 65** |

   Before the Court are four motions pending in this action filed by Plaintiff Keith R.

Burch against the Mayor of Orofino and members of the Orofino City Council

(collectively, "City Council") under 42 U.S.C. § 1983 and Idaho law. The City Council

filed a Motion for Summary Judgment on all of Burch's claims, (Dkt. 22), after which

Burch moved to amend the complaint (Dkt. 36) and extend discovery (Dkt. 58). On

December 4, 2013, the Court heard oral argument on the three motions and all three were

taken under advisement. (Dkt. 64.) For the reasons explained below, the Court will grant

the City Council's motion for summary judgment, deny Burch's motion to amend, and deny as moot Burch's motion to extend discovery.

Five days after the three motions were taken under advisement, Burch filed a motion to supplement his response to the City Council's motion for summary judgment (Dkt. 65). The Court expedited briefing on the motion, the City Council filed a response on December 16, 2013, and Burch filed a reply on January 1, 2014. In the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, Burch's motion to supplement will be decided on the record pursuant to District of Idaho Local Civil Rule 7.1(e). For the reasons discussed more fully below, the Court will deny Burch's motion to supplement.

## BACKGROUND

Burch's Complaint alleges the City Council violated his federal procedural due process and equal protection rights by denying a special use permit application he submitted in June 2012. The application sought permission to operate a law office in a single family residential zone. Burch also claims the City's hearing process violated various provisions of Idaho's Local Land Use Planning Act ("LLUPA") (Idaho Code § 67-6501 *et seq*.) and, by extension, the due process guarantee in the Idaho Constitution. In addition, Burch seeks to supplement his summary judgment response, amend his complaint with a federal substantive due process claim and, depending on the outcome of the City Council's motion for summary judgment, extend discovery in this matter. The City Council argues that Burch has not shown good cause for supplementation, the proposed amendment to add a substantive due process claim is futile, further discovery is

unnecessary, and the City Council is entitled to summary judgment on all of Burch's claims.

## 1.     Findings of Fact

The Court finds the following to be the undisputed material facts for the purposes of deciding the City Council's Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(a). The property at the heart of this controversy, 903 Kalaspo Avenue Orofino, Idaho, is located in an R-2 zoning district. (Dkt. 1-1 at 1.) The Orofino City Code defines the R-2 zone as a "Single-Family Dwelling District." Orofino City Code § 11-2-4. Further, businesses other than small daycare facilities and certain "home occupations"[1] may operate in the R-2 zone only by obtaining a special use permit. *Id.* On June 20, 2012, Burch[2] filed a written application for a special use permit to operate and post a sign for a law office at 903 Kalaspo Avenue. (Dkt. 1-1 at 1.) A special use permit is necessary for the proposed law office because, as Burch explains, the office is "incompatible with the uses permitted outright in an R-2 Zone." (Dkt. 1 ¶ 25.)

---

[1] The Orofino City Code defines "home occupation" as:

> Those activities engaged in one or two (2) rooms of a home or its accessory building; such as home care products, arts and crafts, online computer services, typing, bookkeeping and like activities. *A home occupation shall not detract from or change the integrity or character of the residential zone. There shall not be any outside indication such as signage or other indication that a home occupation exists at a residence.* Any occupation that does not conform with the intent of this definition shall apply for a special use permit with the Planning and Zoning Commission. The City reserves the right to revoke a home occupation permit and license if the nature of the home occupation changes or complaints on the home occupation persist.

Orofino City Code § 11-2-1 (emphasis added).

[2] Plaintiff Keith Burch is an attorney licensed to practice law in Idaho. Burch elected to appear pro se in this matter.

Applications for special use permits are considered first by the Orofino Planning and Zoning Commission. Orofino City Code § 11-2-13. If the Planning and Zoning Commission recommends approval of the permit, the City Council takes up the matter. *Id*. After a public hearing on July 17, 2012, the Orofino Planning and Zoning Commission voted to recommend approval of the special use permit requested by Burch. (Dkt. 1-1 at 6.) A public hearing before the Orofino City Council followed on August 28, 2012. (*Id.* at 10-13.)

The Council considered Burch's testimony in favor of his application, as well as testimony and letters in opposition to the permit from other city residents and city officials. (*Id*.) The hearing minutes show that the opposition to the proposed law office noted its potential to increase traffic congestion and use on-street parking on Kalaspo Avenue. (*Id*. at 11-12.) For example, the Orofino Police Chief stated that Kalaspo Avenue becomes congested during school hours and students at the nearby elementary school tend to walk in the middle of the street, as there are no sidewalks. (*Id*. at 11.) In addition, several opponents contended the law office would be inconsistent with the residential character of the R-2 zone. (*Id*. at 27-28; Dkt. 53-2 3-9, 11-15.) The hearing minutes also state that, during the City Council's deliberations, Council member McLaughlin indicated Orofino's Comprehensive Plan did not call for a transition from residential to business uses in the R-2 zone. (Dkt. 1-1 at 11-13.) Other Council members voiced concerns over traffic congestion on Kalaspo Avenue, consistency with the area's residential character, and the lack of support for Burch's proposal. (*Id.*) Ultimately, the City Council unanimously voted to deny Burch's application. (*Id*.)

The City sent Burch a written notice of the Council's decision on September 4, 2012, which states "the Orofino City Council has denied your application for a Special Use Permit…." (*Id.* at 26.) The notice further states "the City Council noted that [Burch's] request was not in conformance with the adopted Future Land Use Map within the City's Comprehensive Plan" and "[i]ncreased traffic conditions, the lack of support [for the application] and maintaining the integrity of the R-2 Zone (Residential) were critical components for denying [Burch's] request." (*Id.*) Burch claims the notice omitted certain language required by Idaho law and, thus, does not qualify as notice of a final decision. (Pl.'s Stmt. of Contested Material Facts ¶ 16, Dkt. 53-1.) However, during the Court's hearing on the motions, Burch conceded that the City Council reached a final decision denying his special use permit application.[3]

According to Burch, the denial of his requested special use permit differs from the Council's treatment of two similar permit applicants. After the denial of Burch's permit, the City Council, in December 2012, approved a special use permit for a law office in an R-3 zone. (Burch Aff. ¶¶ 113-14, Dkt. 53-3.) And, two years before Burch's application, the City Council approved a special use permit for an eight-child daycare in the R-2 zone on H Street, less than one block away from Burch's Kalaspo Avenue home. (Dkt. 1-1 at 15 (map), 17 (initial daycare hearing), 24 (daycare approval with conditions).)

The daycare permit was issued to Jennifer Dunaway, the wife of Avery Dunaway, one of the Council members who considered Burch's application. (*Id.* at 16-17.) Avery

---

[3] This concession is essential to Burch's claims because, had the City Council not reached a final decision, the lawsuit would not be ripe. *See Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989).

Dunaway was not a member of the City Council in 2010, when his wife received the daycare special use permit. (*Id.*) Burch submitted the only letter in opposition to the proposed daycare, in which he expressed concerns that the daycare would reduce the value of his Kalaspo Avenue property through increased noise and traffic not suitable for the residential setting. (*Id.* at 18-19.) At an April 13, 2010 hearing on her daycare permit application, Dunaway stated she did not believe traffic would be a problem.[4] (*Id.* at 17.) Then, at a July 13, 2010 hearing, the City Council approved Dunaway's application subject to certain conditions. (*Id.* at 24.) Although Dunaway requested an unconditional permit for a twelve-child daycare, (*Id.* at 17), the permit allows only eight children, requires a yearly review, and states that "legitimate complaints may result in… revocation." (*Id.* at 24.)

## 2. Procedural Background

Burch filed his Complaint on December 27, 2012. The Complaint names as defendants Ryan Smathers, in his official capacity as the Mayor of the City of Orofino, and individual City Council members – Ron Banks, Ted Brown, Mike Deitrick, Avery Dunaway, Don Gardner, and Marguerite McLaughlin. Under 42 U.S.C. § 1983, Burch alleges that the City Council's deficient hearing procedures and irrational differential

---

[4] Burch proposes to supplement his summary judgment response with an "expert report" by Dr. Ahmed Abdel-Rahim, a professional engineer. (Dkt. 65.) Dr. Abdel-Rahim opines that the Dunaway's daycare would produce more vehicle "trips" than Burch's proposed law office. (Abdel-Rahim Rpt. at 3, Dkt. 66-1.) The report also indicates that the "morning peak hour of the daycare facility traffic is likely to be the same as the morning peak hour for the adjacent street area" but that the law office's morning peak would be different. (*Id.*) As discussed below, Burch has failed to show good cause for supplementing the record with the report. Nonetheless, Dr. Abdel-Rahim's conclusions do not demonstrate that the daycare produced problematic traffic levels. Nor does the report show the City Council lacked a rational basis for its traffic concerns in connection with Burch's application.

treatment of his application deprived him of his federal due process and equal protection rights. In addition, Burch alleges the Council violated various procedural requirements in Idaho's LLUPA and, thus, also infringed upon his due process rights under the Idaho Constitution.

The City Council filed its Answer on January 25, 2013. The Council served by mail its initial discovery disclosures to Burch on March 7, 2013. On the same day, the City Council filed a motion for summary judgment, (Dkt. 22), seeking judgment on all of Burch's claims. This motion for summary judgment was filed less than three months after Burch filed his Complaint.

On March 24, 2013, Burch timely filed a motion for an extension of time to respond to Defendants' motion for summary judgment, and the Court granted extension through April 10, 2013. (Dkt. 28.) Then, on April 6, 2013, Burch filed a motion under Rule 56(d) asking the Court for additional time to conduct discovery before responding to Defendants' motion for summary judgment. In its May 15, 2013 Order, the Court granted Burch sixty days to conduct discovery, including written interrogatories to all named defendants. (Dkt. 38.) Consistent with Rule 56(d), the Court limited discovery to subjects where Burch articulated a specific, non-conclusory need for additional information— namely, "the City Council's issuance of special use permits to similarly situated properties and the identity of the persons responsible for the audio recordings of the public hearings." (Dkt. 38 at 10.) Discovery proceeded through early summer.

In late June, Burch moved to further extend the deadline for his summary judgment response. Finding good cause, the Court extended the response deadline to July

23, 2013. (Dkt. 50.) Burch filed his opposition to the motion for summary judgment in accordance with that deadline, and Defendants filed their reply in early August 2013.

Also before the Court are Burch's motions for leave to file an amended complaint, (Dkt. 36), and to extend the Court's September 30, 2013 deadline for factual discovery (Dkt. 58). The motion to amend requests leave to add (1) a federal substantive due process claim; (2) more alleged facts concerning the federal equal protection claim; and (3) claims for compensatory damages, including presumed damages. The City Council, paraphrasing their summary judgment arguments, contends the proposed amendments would be futile. The motion to extend discovery seeks a new schedule for discovery, following resolution of the motion for summary judgment—a request that the City Council does not oppose but, instead, contends is unnecessary given the substantial discovery that has already occurred. As mentioned above, on December 4, 2013, the Court heard oral argument on all three motions and took them under advisement.

On December 9, 2013, without requesting permission, Burch filed a motion to supplement his response to the City Council's motion for summary judgment—more than four months after Burch filed his response to the motion for summary judgment. (Dkt. 65.) The motion to supplement requests that the Court consider an "Expert Witness Report," which Burch disclosed to the City Counsel in discovery but failed to submit in the record before the Court. To avoid delay, the Court expedited briefing on the motion to supplement. The City Council filed its opposition on December 16, 2013, Burch filed a reply on January 1, 2014, and the motion to supplement is ripe for consideration.

# DISCUSSION

The facts material to Burch's federal claims are few and not in genuine dispute. The facts material to Burch's state law claim—the date the City sent Burch notice of the Council's decision and the date Burch filed the Complaint—are also beyond dispute. Upon consideration, the Court finds summary judgment is appropriate for reasons more fully set forth below. From this, it follows that Burch's proposed amendments to the complaint are futile and the motion to extend discovery is moot. In addition, the Court finds Burch has not shown good cause to supplement his response to the motion for summary judgment.

## 1.    Motion for Summary Judgment

### a.    *Standard for Summary Judgment*

Rule 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir.2010) (quoting *Anderson*, 477 U.S. at 248).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.2010)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id.* (citing *Celotex*, 477 U.S. at 325). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citing *Celotex*, 477 U.S. at 324). "If a party... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may... consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

**b.**     ***Federal Procedural Due Process***

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Critically, procedural due process requirements apply to the deprivation of only those interests protected by the Fourteenth Amendment. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Burch maintains that certain City Council members' bias against his permit request, coupled with Council members' ex parte views of 903 Kalaspo Avenue, violated the Fourteenth Amendment's due process guarantee. In response, Defendants advance two alternative arguments for granting summary judgment on Burch's federal procedural due process claim—Burch does not have a protected interest in the special use permit and, even if he did, Burch received due process.

The existence of a protected interest is the threshold inquiry. "[N]ot every procedural requirement ordained by state law… [is] entitled to constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008). Rather, relief on a federal

procedural due process claim is available only to a plaintiff who can "establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Id.* at 1090 (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

### i. *Liberty Interest*

Burch's Complaint does not explicitly allege a deprivation of a constitutionally protected liberty interest. Nevertheless, the City Council argues in its memorandum in support of summary judgment that Burch does not have a liberty interest at stake. (Dkt. 22-1 at 7.) Burch responds that summary judgment would be premature until he articulates a liberty interest claim "in accord with the timeline appropriate for this controversy." (Dkt. 53 at 9.) The Court will not accept Burch's invitation to defer judgment, however, especially when Burch had ample time to clearly state a liberty interest claim and ample notice that the Council would dispute its existence. Indeed, the City Council raised the issue in its March 7, 2013 memorandum, yet Burch's April 29, 2013 proposed amended complaint does nothing to clarify the interest or interests at stake in his due process claim. Moreover, the deadline for amended pleadings has long since passed.

Even if the Court liberally construes the pleadings—as it would for non-attorney pro se litigants, *see Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)—Burch's liberty interest claim fails. There is "some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). Nevertheless, a protected liberty interest has only been recognized where "(1) a

plaintiff challenges the rationality of government regulations on entry to a particular profession or (2) a state seeks permanently to bar an individual from public employment." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2008). There is simply no evidence suggesting that the Council's decision barred Burch from public employment or inhibited his entry into the practice of law. Quite the opposite, Burch is duly admitted to practice law in Idaho and is engaged in private practice, including the maintenance of this lawsuit. Therefore, the record before the Court indicates Burch does not have a cognizable liberty interest at stake.

### ii. *Property Interest*

A constitutionally protected property interest in a land use permit exists where state law gives rise to a "legitimate claim of entitlement" to the permit. *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1020 (9th Cir. 2011), *cert. denied* 132 S.Ct. 249 (2011). "Vested rights in a land development permit… 'are created and their dimensions are defined by existing rules or understandings that stem from… state law.'" *Outdoor Media Group, Inc. v. City of Beaumont*, 503 F.3d 895, 903 (9th Cir. 2007) (quoting *Roth*, 408 U.S. at 577). A legitimate claim of entitlement can exist where state law significantly limits the decision maker's discretion or where the decision maker's policies and practices create a de facto property interest. *Gerhart*, 637 F.3d at 1021. However, "[a] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).

With these principles in mind, the Court looks to Idaho law. The LLUPA

provision governing the special use permitting process provides in relevant part:

> A special use permit *may* be granted to an applicant if the proposed use is
> conditionally permitted by the terms of the ordinance, subject to conditions
> pursuant to specific provisions of the ordinance, subject to the ability of
> political subdivisions, including school districts, to provide services for the
> proposed use, and when it is not in conflict with the plan.

Idaho Code § 67-6512(a) (emphasis added). Critically, this provision does not say "a

special use permit shall be granted"; rather, operative word "may" clearly indicates the

Council has discretion to grant or deny a permit even if all other listed conditions are

satisfied. *See Marcia T. Turner, L.L.C. v. City of Twin Falls*, 159 P.3d 840, 848-49 (Idaho

2007). Although the City Council may impose conditions on special use permits or order

"studies of the social, economic, fiscal and environmental effects of the proposed special

use," nothing in the Orofino City Code constrains the Council's discretion to grant or

deny special use permits. Orofino City Code § 11-2-13. In other words, both LLUPA and

the City Code lack mandatory language that would give rise to a legitimate claim of

entitlement to a special use permit under the circumstances of this case.

In a similar context, the United States Court of Appeals for the Ninth Circuit held

that a Spokane, Washington, ordinance did not create a legitimate claim of entitlement.

*Shanks,* 540 F.3d at 1090. *Shanks* involved a claim that the City of Spokane, by

approving a building permit in a historic district, violated neighboring property owners'

procedural due process rights. The Ninth Circuit assumed without deciding that the

neighbors could have a constitutionally protected interest in the application of zoning

rules to a neighboring property, but nevertheless found they had no legitimate claim of

entitlement to denial of the building permit. *Id*. Spokane's ordinance, like Orofino's, did not mandate an outcome, and Washington law, like LLUPA, did not obligate the city to act in a particular way. *Id*. Accordingly, the Ninth Circuit affirmed summary judgment in favor of the city.

Likewise, in *Gerhart*, the Ninth Circuit found neither Montana law nor the Lake County, Montana, Commissioners' practices and polices created a legitimate claim of entitlement to a land use permit. 637 F.3d 1013. There, as here, the aggrieved plaintiff sued under 42 U.S.C. § 1983, alleging the permit denial violated his due process and equal protection rights. In affirming the district court's summary judgment on Gerhart's due process claims, the panel emphasized the controlling Montana statute, like Idaho Code § 67-6512(a), featured the permissive word "may" and thus did not significantly constrain the Commissioners' discretion to deny the permit. *Id.* at 1020. The panel also examined whether the Commission's past practice of leniently granting the permit gave Gerhart a legitimate claim of entitlement. Although Gerhart believed his permit application would be approved, there was no evidence of a "mutual understanding" that Gerhart's permit would be granted. *Id.* at 1021. Consequently, Gerhart's unilateral belief that the permit should have been granted did not amount to a constitutionally protected property interest.

In the face of this precedent, Burch argues Idaho law is different. Burch contends that "[t]aken together" LLUPA and the Orofino City Code create a legitimate claim of entitlement by imposing procedural constraints on the Orofino City Council. (Dkt. 53 at 8-9.) However, "procedural requirements ordinarily do not transform a unilateral

expectation into a protected interest….” *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). Only if procedural requirements amount to a "significant substantive restriction on decision making" do they give rise to a protected property interest. *Id.* (internal quotation omitted). The Court finds no such restrictions in either LLUPA or the Orofino City Code, and Burch makes no showing to the contrary.

Both LLUPA and the Orofino City Code contain numerous requirements for special use permit hearings. *See* Idaho Code 67-6512; Orofino City Code § 11-2-13. However, procedural elements, such as the form, content, or timing of notice, do not create substantive permitting criteria nor do they compel permit approval when certain conditions are met. In fact, both LLUPA and the Orofino City Code unequivocally state: "A special use permit shall not be considered as establishing a binding precedent to grant other special use permits." *Id.* This language forecloses reliance on the City's Council's past permit decisions and underscores the discretionary, case-by-case nature of the special use permitting process.

Similarly, Orofino's special use application form does not cabin the City Council's discretion by requiring a "narrative statement." A complete special use application form must include a statement addressing nine land use factors. [5] (*See* Dkt. 1-1 at 1 (Burch's

---

[5] The special use application form requires a narrative statement that the proposed special use:
> 1) Will, in fact, constitute a special use as established on the Official Schedule of District Regulations for the Zoning District involved;
> 2) Will be harmonious with and in accordance with the general objectives or with any specific objective of the Comprehensive Plan and Zoning Ordinance;
> 3) Will be designed, constructed, operated and maintained to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the area;
> 4) Will not be hazardous or disturbing to existing or future neighboring uses;

application form).) These factors highlight considerations generally at issue for special use permits, but nowhere does the application form, let alone LLUPA or the Orofino City Code, limit the City Council's analysis to those factors. The application form does not suggest that a permit will be granted merely because an applicant submits a narrative statement addressing each factor. To the contrary, the applicant's narrative, like testimony and other materials received during the public hearing, provides information for the Council to consider in its decision on the permit request.

In sum, Idaho law does not impose a constitutionally significant restriction on the City Council's discretion to issue or deny special use permits. Notwithstanding Burch's unilateral expectation, the procedural requirements of LLUPA and the Orofino City Code create no legitimate claim of entitlement to a special use permit. Because Burch does not make the threshold showing of a constitutionally protected interest, his federal due process claim fails as a matter of law.

---

5) Will be served adequately by public facilities and services such as streets, police and fire protection, drainage, refuse disposal, water and sewer, and schools; or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide such services;
6) Will not require excessive additional requirements at public cost for facilities and services and will not be detrimental to the economic welfare of the community;
7) Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property or the general welfare of the public;
8) Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public thoroughfares;
9) Will not result in the destruction, loss or damage of a natural, scenic, or historic feature of major importance.

(Dkt. 1-1 at 1.)

### c. *Federal Equal Protection*

Burch contends the City Council's denial of his special use permit application violates equal protection because he was treated differently than similarly situated applicants. However, Burch does not contend the discrimination was on the basis of a suspect classification or in derogation of a fundamental right. (*See* Dkt. 1 ¶ 69.) Rather, Burch maintains he is a "class of one" singled out for disparate treatment without rational basis. (*Id*. ¶ 68-69.)

The Equal Protection Clause of the Fourteenth Amendment provides: "No state shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In addition to supporting claims against class-based discrimination or deprivation of fundamental rights, the United States Supreme Court has recognized that the equal protection clause may, in some circumstances, afford individuals relief from intentional, irrational, and differential treatment at the hands of the Government. *E.g.*, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). But, to succeed on his "class of one" claim, Burch must demonstrate the City Council: "(1) intentionally (2) treated [Burch] differently than other similarly situated property owners, (3) without rational basis." *Gerhart*, 637 F.3d at 1022 (citing *Willowbrook*, 528 U.S. at 564).

Noting that disparate treatment, alone, is insufficient, the City Council first argues summary judgment should be granted because there is no evidence of "purposeful, invidious discrimination." (Dkt. 22-1 at 14.) Although a class of one claimant must receive intentional differential treatment, the treatment need not be motivated by animus

or ill will. *Gerhart*, 637 F.3d at 1022. The City Council quotes out-of-circuit case law for the proposition that the class of one plaintiff must suffer "purposeful, invidious discrimination." (Dkt. 22-1 at 13 (quoting *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 329 (4th Cir. 2005).) But the word "invidious" implies an element of subjective ill will that is not required by Ninth Circuit precedent. *Compare Gerhart*, 637 F.3d at 1022 ("subjective ill will" unnecessary) *with* Black's Law Dictionary 535 (9th Ed. 2009) (defining "invidious discrimination" as "[d]iscrimination that is offensive or objectionable, esp. because it involves prejudice or stereotyping.")

There can be little doubt the Orofino City Council intentionally treated Burch differently than successful special use permit applicants. The Council denied his application and stated reasons for doing so. (Dkt. 1-1 at 26.) But the inquiry does not end here. To survive summary judgment, there must be evidence from which a reasonable trier of fact could determine Burch was treated differently from similarly situated applicants without rational basis. Burch cannot make this showing.

"The Equal Protection clause does not forbid classifications"; "[i]t simply keeps governmental decisionmaker's from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In the land use context, at least one Circuit has set a high bar, requiring a class of one plaintiff to demonstrate treatment different from "someone who is *prima facie* identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). "An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff." *Thornton v. City of St. Helens*, 425 F.3d

1158, 1167 (9th Cir. 2005) (quoting *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986)). For this reason, the Ninth Circuit has found that different land uses, or even an identical use in a different zone, do not qualify as similarly situated. *Id*. at 1167-68.

In *Thornton*, for instance, the operators of an automobile wrecking yard brought a class of one claim after the city of St. Helens, Oregon, denied a necessary local land use approval. *Id.* Summary judgment was appropriate because the wrecking yard operators could not show the city treated other wrecking yards differently. *Id.* Although there were no other wrecking yards in the city, other businesses in the same "Heavy Industry" zone were not similarly situated, as they did not raise the same regulatory concerns. *Id.* Conversely, in *Gerhart*, the Ninth Circuit found similarly situated ten properties *on the same block* that were not required to obtain the same permit as the plaintiff. 637 F.3d at 1022. The lesson of these cases is that a class of one plaintiff must show other persons were treated differently in nearly identical circumstances.

Here, Burch argues the City Council granted two special use permits to similarly situated applicants. First, Burch highlights the Council's approval of a permit for a law office in an R-3 zone. (Dkt. 53 at 18.) The City Council approved the R-3 law office application in December 2012, a few months after it denied Burch's R-2 law office application. But "[e]vidence of different treatment of unlike groups does not support an equal protection claim." *Thornton*, 425 F.3d at 1168.

Although the use and timing are nearly identical, the two zoning classifications are dissimilar. One clear difference is that Orofino's R-3 zone is less restrictive than the R-2 zone with respect to off-street parking. Parking lots are allowed for all permitted uses in

the R-3 zone, whereas only church parking lots are allowed in the R-2 zone. Orofino City Code §§ 11-2-4(B) (R-2), -5(B) (R-3). Congestion related to on-street parking was one of the factors in the Council's decision to deny Burch's application. Unlike *Gerhart*, where the plaintiff was forced to apply for a permit that was not required for ten other properties on the same block, 637 F.3d 1013, the different zoning classifications distinguish the two law offices here. Approval of the R-3 permit merely shows the Council consistently requires special use permits for law offices in residential zones and may approve or deny a permit application depending on the circumstances. Therefore, the R-3 law office is not similarly situated to Burch's proposed R-2 law office.

Second, Burch highlights the fact that the City Council granted Jennifer Dunaway a special use permit to operate an eight-child daycare. The daycare operates in a home on H Street in the R-2 zone close to Burch's property. The permit was conditionally granted for a different business use, at a different time (2010), by a somewhat different City Council, and for a residence on a different street. (Dkt. 1-1 at 24.) Nevertheless, Burch insists the daycare is similarly situated to his proposed law office merely because it is an in-home business in the R-2 zone.

Under this logic, every permit denial for a proposed R-2 business could rise to the level of an equal protection violation, converting the Court into the arbiter of Orofino's land use policy. Yet "land-use planning questions touch a sensitive area of social policy into which the federal courts should not lightly intrude." *Pearl Inv. Co. v. San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985). This policy is particularly important in Idaho, where there is a "strong presumption" in favor of local zoning decisions. *Sanders Orchard v.*

*Gem County*, 52 P.3d 840, 843 (2002). Policy considerations aside, the record demonstrates that the daycare is a different business use on a different street than Burch's proposed in-home law office.

Even assuming that the R-3 law office or the daycare is similarly situated, the record clearly demonstrates rational reasons for distinguishing Burch's law office. In the class of one context, the test is "whether there is a rational basis for the *distinction*, rather than the underlying government *action*." *Gerhart*, 637 F.3d at 1023. In other words, summary judgment is appropriate if the Court determines, as a mixed question of law and undisputed fact, there was a rational basis for distinguishing Burch's application from those of similarly situated applicants. The undisputed facts show a clear rational basis for distinguishing the R-3 law office from Burch's proposed R-2 office. The very purpose of zoning is to facilitate different forms of development in different zones, and the distinct zoning classifications implicate a host of different land use policy concerns. The City Council could therefore rationally distinguish Burch's proposal from a law office in a different zone.

The record also shows the City Council had several rational bases for distinguishing Burch's proposed law office from the daycare. While only Burch opposed the daycare application, the record contains numerous examples of public opposition to Burch's application. Standing alone, public opposition to a land use proposal may not be enough, but it is an "appropriate factor for consideration…." *Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989); *see also Schwartz v. Adams County*, No. 1:09-cv-019-EJL-CWD, 2010 WL 2667207, at * 7 (D. Idaho July 1, 2010) (finding public opposition

provided rational basis for land use enforcement action). Relying on more than just the strong opposition, the City Council cited other rational bases for its decision.

For instance, Council members and the public expressed concerns about consistency with the Orofino Comprehensive Plan and preservation of the neighborhood's residential character. It is undisputed that allowing more businesses in the R-2 zone would tend to alter its residential character. Moreover, the City Council heard testimony regarding the law office's potential to exacerbate traffic congestion, parking issues, and consequent public safety concerns on Kalaspo Avenue—a street where many children walk to school. The daycare, by contrast, was on a different street and the record does not indicate a similar level of public or official concern about consistency with surrounding uses, parking, or traffic congestion. And, critically, both LLUPA and the Orofino City Code prohibit treating one special use permit as precedent for another. Idaho Code 67-6512; Orofino City Code § 11-2-13.

At bottom, it is not irrational to conclude that an eight-child daycare is more consistent with a neighborhood of single-family homes than a law office. *Thornton* instructs that dissimilar businesses in the same zone are not necessarily entitled to similar treatment. *See* 425 F.3d at 1167-68. And, unlike *Gerhart*, where there was some evidence to contradict each reason for the County Commissioner's decision, 637 F.3d at 1023-24, there is no genuine dispute here. The City Council stated, in writing, that traffic, the lack of public support, consistency with the Comprehensive Plan, and maintaining the area's residential character were all "critical components" of the decision to deny Burch's application. (Dkt. 1-1 at 26.)

Burch does not contend the City Council's stated reasons are untrue or illegitimate governmental concerns. Rather, he asserts that the stated reasons are merely pretext for an otherwise irrational decision. Considering the record, the Court is not persuaded by Burch's contention. Further, pretext does not necessarily equate to illegitimacy or irrationality. And, in any event, the rational basis test is not a vehicle for scrutinizing decision makers' subjective motives. Instead, "government actions that do not affect fundamental rights or liberty interests and do not involve suspect classifications will be upheld if they are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir.2005).

The Court concludes that no reasonable jury could find the City Council lacked a rational basis for distinguishing Burch's law office permit application from the daycare's application. There is support in the record for each of the City Council's stated reasons for denying Burch's application. And there is no evidence that the City Council irrationally disregarded similar concerns when it granted the daycare's special use permit. Therefore, the Court will grant summary judgment on Burch's equal protection claim.

**d.      *State Law Claims***

Burch contends the City Council's hearing process violated several LLUPA requirements. Specifically, Burch alleges violations of Idaho Code Sections 67-6506 (Council members with conflicts of interest may not participate in decisions), 67-6535 (permit decisions are to be based on standards), and 67-6536 (requiring a verbatim record of all hearings). Burch also claims: "Idaho Code §§ 67-6519(4) and 67-6521(1)(d), as informed by Idaho Code § 67-6535,… [entitle him] to injunctive and prospective relief"

for violations of the due process guaranteed by Article I, Section 13 of the Idaho Constitution. (Dkt. 1 ¶ 110-111.)

LLUPA's judicial review provisions are the "exclusive" avenue for review of all land use decisions by Idaho's local governments. *Giltner Dairy, LLC v. Jerome County*, 249 P.3d 358, 361 (Idaho 2011). In other words, a government action pursuant to LLUPA is not reviewable except as authorized by LLUPA. *Burns Holdings, LLC v. Madison County Bd. of County Com'rs*, 214 P.3d 646, 662 (Idaho 2009). Under LLUPA, land use permit applicant must seek judicial review of a permit denial within 28 days of exhausting all administrative remedies under the local ordinance. Idaho Code §§ 67-6519, -6521.

Burch does not cite, and the Court cannot identify, an Orofino City Code provision granting additional administrative remedies once the City Council denies a special use permit. Indeed, the parties agree that the City Council reached a final decision to deny Burch's special use permit application. There is also no dispute that the City of Orofino sent Burch written notice of that decision on September 4, 2012, nor does Burch contend the city's notice is somehow ineffective. Hence, Burch exhausted his administrative remedies before filing his complaint on December 27, 2012—113 days after the City sent notice.

Arguing only that the Court's *jurisdiction* over his state law claims renders LLUPA's judicial review provision inapplicable, Burch's opposition to the City Council's motion for summary judgment does not address timeliness. While it is true the Court has supplemental jurisdiction over Burch's state law claims, *see generally City of*

*Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-68 (1997) (discussing supplemental jurisdiction), it does not follow that the Court must jettison the relevant state law. When considering supplemental state law claims, federal courts apply the relevant state statute of limitations. *Notrica v. Bd. of Supervisors of San Diego County,* 925 F.2d 1211 (9th Cir. 1991). After all, "[i]t is not the function of a federal court to rescue a party from the danger of limitation by permitting the litigation of inappropriate matters in federal court." *Id.* at 1216 (internal quotations omitted).

The 28-day limitation on judicial review prescribed by LLUPA governs Burch's state law claims, whether filed in this Court or in Idaho state court. By any reasonable measure, Burch's claims under LLUPA are untimely. Moreover, Article I, Section 13 of the Idaho Constitution does not provide a free-standing cause of action. Burch cites no authority besides LLUPA that would entitle him to relief on his state constitutional claim. Thus, the state constitutional claim is also time barred because it is intertwined with Burch's untimely LLUPA claims.

**2.      Motion to Amend Complaint**

Burch timely moved to amend his Complaint the day before the Court's deadline for amended pleadings. The proposed amended complaint would add three new features to the Complaint: (1) a substantive due process claim; (2) new factual allegations concerning a special use permit granted to a law office in Orofino's R-3 zone; (3) a compensatory damages claim under 42 U.S.C. § 1988.

Rule 15 allows amendment after a responsive pleading only with leave of the Court or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Typically, leave

to amend is liberally granted, but leave is properly denied when amendment would be futile. *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "[F]utility includes the inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987). The City Council argues, and the Court agrees, all of Burch's proposed amendments are futile.

As with Burch's procedural due process claim, a substantive due process claim is viable only when it involves the deprivation of a constitutionally protected interest. *Gerhart*, 637 F.3d 1013. Because LLUPA and the Orofino City Code clearly provide the City Council broad discretion to grant or deny special use permits, Burch lacks a legitimate claim of entitlement to such a permit. Accordingly, Burch's proposed substantive due process claim fails for the same reason as his procedural due process claim.

Likewise, additional facts do not save Burch's equal protection claim. In the land use context, the similarly situated requirement sets a high bar. As discussed above, the City's approval of a special use permit for a law office in an R-3 zone does not bolster Burch's challenge to a permit denial in an R-2 zone. The R-3 classification is less restrictive than R-2 and permits off-street parking development. In addition, the City Council presented evidence that the R-3 application did not raise the same traffic, parking, and congestion concerns as Burch's application. (Dkt. 39 at 10 (citing 2d Montambo Aff. ¶ 10-11, Dkt. 34-1).) Simply put, the two law offices are not similarly situated. *See Thornton*, 425 F.3d at 1167-68. Therefore, adding new facts about the R-3 law office would not advance Burch's class of one equal protection claim.

Finally, because each of Burch's theories of liability is subject to summary judgment, it would be futile to amend the Complaint with additional damage claims. The motion to amend the complaint will be denied because the proposed amendments would inevitably be defeated on summary judgment.

## 3. Motion for Extension of Time to Complete Discovery

Burch requests additional time to conduct discovery because "discovery to date has been limited… and because further discovery *may* be necessary to achieve full resolution of this controversy." (Dkt. 58 at 2 (emphasis added).) His request comes five months after the Court partially granted his Rule 56(d) motion to defer consideration of the motion for summary judgment pending discovery. (Dkt. 38.) Burch is technically correct that discovery was limited by the Court's Order dated April 29, 2013, but he overlooks the source of the limitation—his largely conclusory allegations and Rule 56(d) itself. Burch specifically requested only information concerning "the City Council's issuance of special use permits to similarly situated properties and the identity of the persons responsible for the audio recordings of the public hearings." (*Id*. at 10.)

The Court permitted discovery on these subjects, and Burch seized the opportunity. Not only did the City Council respond to Burch's interrogatories, but Burch deposed every defendant. Now, Burch asserts, without more, that "additional discovery in this controversy will be necessary." This assertion fails not only because it lacks specificity, *see State v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998), but also because no controversy remains.

A district court may grant summary judgment, despite a party's assertion that additional discovery is necessary, when additional discovery would not preclude summary judgment. *Qualls ex rel. Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839 (9th Cir. 1994). According to the analysis above, none of Burch's existing or proposed claims withstand summary judgment. Burch's motion to extend discovery gives no indication that additional discovery would preclude summary judgment. In fact, the motion does not identify what, if any, additional discovery Burch seeks. Thus, the motion will be denied as moot.

**4.      Motion to Supplement**

Months after the City Council's motion for summary judgment was fully briefed and nearly one week after the Court took the above motions under advisement, Burch moved to supplement his summary judgment response. Burch requests the Court consider a report prepared by Dr. Ahmed Abdel-Rahim, a professional engineer licensed in Idaho. Dr. Abdel-Rahim's report purports to show: (1) an eight-child daycare on H Street produces more "trips" than a single-tenant office building with two employees on Kalaspo Avenue (a proxy for Burch's proposed law office) and (2) unlike the daycare, "morning peak" traffic for Burch's "office building" is not likely to coincide with that of the adjacent streets. (Abdel-Rahim Rpt. at 2, Dkt. 66-1.)

Burch claims that the motion to supplement is made "pursuant to Dist. Idaho Loc. Civ. Rule 7." (Dkt. 65 at 1.) As an initial matter, there is no "Local Rule 7" in the District of Idaho. There is, however, a Local Rule 7.1, which pertains to motion practice and

which the Court will presume is the basis for Burch's motion. Even so, Burch's reliance on this rule is unavailing.

Typically, Local Rule 7.1(c) requires a response to a motion for summary judgment, along with any supporting materials, to be filed 21 days after service of the motion on the non-moving party. However, the Court extended Burch's response deadline three times, ultimately moving the default March 27, 2013 deadline to July 22, 2013. The Court granted each extension because Burch articulated good cause. *See* Fed. R. Civ. P. 6(b)(1). But, because the motion to supplement came long after the response deadline and days after the Court took the matter under advisement, Burch must show not only good cause for more time, but also that the late motion to supplement was the result of excusable neglect. *Id.*

The Court analyzes Burch's claim of "excusable neglect" according to four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010). The Court finds Burch's motion to supplement is made in good faith. However, the remaining three factors indicate Burch's neglect is not excusable.

The City Council underscores the potential for prejudice, noting it "expended considerable resources" arguing its motion for summary judgment on a record that did not contain Dr. Abdel-Rahim's report. (Dkt. 68 at 3.) On the other hand, Burch characterizes the delay as "short" and thus unlikely to prejudice the City Council because

it received the report as part of Burch's expert disclosures. (Dkt. 70 at 7.) That is a dramatic mischaracterization of the posture of this case.

Burch has been in possession of Dr. Abdel-Rahim's report since August 13, 2013. (*Id.* at 6.) Oral argument on all pending motions took place on December 4, 2013, almost four months after Burch received the report. During oral argument, the Court specifically asked the parties whether the record contained evidence of traffic problems associated with the daycare. Despite this clear prompt from the Court, Burch did not mention the report and, instead, Burch admitted there was nothing in the record. Then, five days after the matter was taken under advisement, Burch moved to add the report to the record. Allowing Burch to supplement the record at this late stage would, at a minimum, require the City Council to submit additional briefing on a matter that was ripe for a decision in its favor. Such delay and added expense would clearly be prejudicial to the City Council.

According to Burch, the tardy motion to supplement resulted from a combination of inadvertence and inexperience. Pro se litigants "are required to become familiar with and comply with all Local Rules of this District, as well as the Federal Rules of Civil… Procedure." Dist. of Idaho Loc. Civ. R. 83.7. And it should go without saying that attorneys practicing in any court are expected to know and follow applicable rules and procedures. Indeed, it is Burch's professional responsibility as a licensed attorney to competently represent his clients. *See* Idaho R. Prof'l Conduct 1.1. That obligation is not diminished where, as here, an attorney represents himself. In all cases, "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Id*. Thus, a mistake or, worse, failure to

comprehend the Court's procedural rules is not a good reason to supplement the record so late in this proceeding.

The likelihood of prejudice to the City Council, the long delay, and Burch's inadequate reasons for supplementation indicate his neglect is not excusable. Nevertheless, the Court is mindful that the general purpose of its procedural rules is to ensure a decision on the merits. *Ahanchian*, 624 F.3d at 1258-59. For that reason, the Court will consider the substance of the report to determine what, if any, impact it would have on this proceeding.

Burch claims that the report raises a genuine issue of fact material to his class of one equal protection claim. Specifically, Burch contends the report shows the daycare on H Street produces more traffic than a single-tenant office building on Kalaspo Avenue. But this information does not alter the conclusion that the City Council had a rational basis for distinguishing Burch's special use permit application from that of the daycare operator. The report is dated August 9, 2013—it did not exist when the City Council considered Burch's special use permit application or Dunaway's application for the daycare permit. It would be inappropriate for the Court to apply a retrospectoscope to the City Council's decision by considering evidence not before the City Council in either permit proceeding. Further, Dr. Abdel-Rahim's analysis does not indicate that the traffic caused by the daycare is in any way problematic; it merely states the daycare produces more "trips" at a time that coincides with the "morning peak" for the adjacent streets. Observations concerning traffic on H Street do not show the City Council's concerns

with Kalaspo Avenue were unfounded,[6] nor do they undercut any of the City Council's other rationales for denying Burch's special use permit application. In fact, the report constitutes an admission that Burch's proposed law office would increase the number of "trips" on Kalaspo Avenue, lending credence to the City Council's concern over "[i]ncreased traffic conditions." (Dkt. 1-1 at 26.) Simply put, Dr. Abdel-Rahim's report would not alter the Court's decision on the merits.

The Court finds that it would be highly prejudicial to allow Burch to ambush the City Council with Dr. Abdel-Rahim's post-hoc analysis. Burch did not disclose the report to the Court until months after the applicable deadline, nor did he even mention it during oral argument on the very issue it purportedly disputes—the rational basis for the City Council's decision. Now, Burch cites only inadvertence and inexperience as the reasons for the delay. This amounts to neither excusable neglect nor good cause for supplementation so late in this case. Therefore, the motion to supplement will be denied.

## CONCLUSION

The essential defect in Burch's suit against the City Council is his reliance on the federal constitution rather than state law. Land use decisions—especially the discretionary special use permit at issue here—involve matters of local concern and expertise. Indeed, "[t]he Supreme Court has erected imposing barriers… to guard against the federal courts becoming the Grand Mufti of local zoning boards." *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989). Lacking a legitimate claim of

---

[6] There is nothing in the record to suggest that traffic on H Street is problematic. But, as discussed above, there is evidence in the record to suggest that additional traffic or congestion on Kalaspo Avenue can rationally be considered undesirable.

entitlement to the special use permit and unable to demonstrate that similarly situated applicants were treated differently without rational basis, Burch cannot prevail on his federal constitutional claims. While judicial review under LLUPA might have afforded a remedy, Burch's state law claims also fail because he did not seek judicial review within 28 days of the City Council's final decision. Therefore, the City Council is entitled to summary judgment on all of Burch's claims. None of the facts or legal theories in Burch's proposed amended complaint or motion to supplement would avoid this result.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 22) is **GRANTED**.

2) Plaintiff's Motion to Amend Complaint (Dkt. 36) is **DENIED**.

3) Plaintiff's Motion to Extend Discovery (Dkt. 58) is **DENIED AS MOOT**.

4) Plaintiff's Motion to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 65) is **DENIED**.

5) Final judgment dismissing this action with prejudice shall be entered in this case accordingly.

Dated: **January 03, 2014**

Honorable Candy W. Dale
United States Magistrate Judge